[S. F. No. 22618. In Bank. Jan. 20, 1969.]

CHARLYE ANN HONORE et al., Petitioners, v. THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents; THE PEOPLE, Real Party in Interest.

John D. Nunes, Public Defender, and Robert L. Boags, Assistant Public Defender, for Petitioners.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, John T. Murphy and Robert R. Granucci, Deputy Attorneys General, for Respondents and for Real Party in Interest.

SULLIVAN, J.—Petitioners are charged by separate informations[1] in the respondent court with possession of marijuana (Health & Saf. Code, § 11530). They seek a writ of prohibition to compel respondent court to grant pretrial discovery of the name of a confidential informant and to restrain said court from taking further proceedings in their respective criminal actions until the identity of the informant has been disclosed. We issued an alternative writ of prohibition. We have concluded that although in seeking prohibition petitioners have mistaken their remedy, they have nevertheless made out a case entitling them to mandate to

---

[1]Petitioner Honore is charged by information No. 42024 filed April 22, 1968, and petitioner Newman by information No. 42023 filed March 28, 1968.

enforce discovery. Accordingly, we treat the petition as one for mandate (see *Powell* v. *Superior Court* (1957) 48 Cal.2d 704, 705 [312 P.2d 698] ; *DeLosa* v. *Superior Court* (1958) 166 Cal.App.2d 1, 2 [332 P.2d 390]) and we order the issuance of a peremptory writ.

On February 18, 1968, about 5 :30 a.m. defendant Charlye Ann Honore was taken into custody by the Richmond (Contra Costa County) police on a charge unrelated to those now pending. At the hearing below Richmond Police Officer Rufus Horton, assigned to the vice squad, testified that about 3 p.m. on February 18, he was contacted by an informant, known by him to be reliable, who discussed with the officer said defendant's past dealing in methedrine and indicated that defendant was probably still involved in selling the drug. The informant further stated that he would attempt to verify this by ascertaining whether said defendant had methedrine in her apartment in Albany (Alameda County).[2]

Defendant Honore was released from custody at 7 :30 p.m. on the evening of February 18. Sometime between 8 and 9 p.m. the informant returned to Richmond to meet with Officer Horton. He stated that he had been at defendant's apartment and had seen a quantity of methedrine there. Four other persons were in the apartment at the time. It is not clear from the record before us whether defendant Honore or defendant Newman was one of the four[3] nor does the record disclose at

---

[2]Defendants assert in their brief that the informant was directed to enter the apartment by Officer Horton and that, therefore, the informant's entry was unlawful because made without a warrant. The record does not disclose whether the informant entered the apartment by lawful or unlawful means, nor is it clear that Officer Horton actually directed the informant to make an entry. It is unnecessary for us to resolve this issue.

[3]At the municipal court hearing Officer Horton, called as a witness by defendants, testified in response to an inquiry by the court that whoever the informer had talked to at the apartment was *not* defendant Honore. Subsequently, in response to questions by counsel for other persons arrested at the apartment, the officer testified that he *did not recall* whether the informer had indicated to him that the informer had seen or conversed with defendant Honore. Still later, in response to the same counsel's questions, the officer stated that the informer had mentioned that the latter *had seen* and *talked* with defendant Honore at the apartment.

At the superior court hearing Officer Horton, again called as a defense witness, testified on direct examination that he *did not recall* whether the informer told him with whom the informer spoke, and that the officer himself did not know.

We cannot regard the above portions of the record as clearly establishing that defendant Honore was present in her apartment when the informer went there. The record is silent as to whether defendant Newman was present at that time.

what time between the 3 p.m. and 8 p.m. meetings with Officer Horton the informant visited the Albany apartment.

In the early hours of February 19 a search warrant was issued to officers of the Albany Police Department by a judge of the Municipal Court of the Berkeley-Albany Judicial District, County of Alameda, authorizing the immediate search in the nighttime of the person of Charlye Ann Honore and the premises located at 1013 Solano Avenue, Albany, occupied by defendant Honore, for heroin, marijuana and restricted dangerous drugs together with any paraphernalia for narcotic packaging and use.

The affidavit for the warrant was made by Officer Horton and it set forth, inter alia, the following facts as constituting probable cause to believe that defendant Honore was then in possession of the specified contraband on the premises or on her person : That affiant was contacted on February 18th by a ''confidential reliable informant'' who told him that Charlye Ann Honore was engaged in the sale of restricted dangerous drugs and had at that time a large quantity of methedrine in her possession at 1013 Solano Avenue, Albany; that affiant considered the confidential informant to be reliable based on past information received from the informant which proved to be correct; and that affiant desired to keep the identity of the informant secret so as not to destroy his future usefulness to law enforcement.[4]

About 1:30 a.m. on February 19, Albany police officers, accompanied by Officer Horton, went to defendant Honore's apartment to execute the warrant. They knocked on the front door and in answer to a question from someone inside the apartment they demanded entry stating that they were police officers and had a search warrant. When the officers heard people running inside the apartment and were not admitted they kicked in the front door and entered the premises. Inside they found 10 persons among whom were defendants. They also found a quantity of marijuana both in cigarette and bulk form scattered throughout the apartment, some of it in plain view. They found no methedrine. The officers arrested defendants for possession of marijuana and informed them of their constitutional rights.

Prior to the preliminary hearing defendants moved under Penal Code section 1538.5 to attack the validity of the search warrant and to compel disclosure of the identity of the

___

[4]In the petition before us defendants do not contest the reliability of the informant or the validity of the search warrant.

informant. The motion was denied. A preliminary hearing was had and defendants were held to answer. After the filing of the informations in respondent court, defendants moved both under Penal Code section 1538.5 and by way of a motion for pretrial discovery to compel disclosure of the identity of the informant.[5] At the hearing on the motions[6] Officer Horton refused to disclose the identity of the informer by claiming the privilege of nondisclosure under Evidence Code section 1041, stating that such disclosure would impair the informer's future usefulness to law enforcement and might also subject the latter to bodily injury or death. The court sustained the claim of privilege and denied the motion for discovery holding that the informer would not be a material witness on the issue of defendants' guilt of the marijuana charges.

The question before us, therefore, is whether respondent court erred in refusing to order the prosecution to disclose the identity of the informer.

Evidence Code section 1041, subdivision (a)(2), provides that a public entity has a privilege to refuse to disclose the identity of an informer if " [d]isclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice . . . ." The above section, enacted in 1965 as part of the Evidence Code and in effect on January 1, 1967, is based on former Code of Civil Procedure section 1881, subdivision 5. We have recently pointed out that the above Evidence Code section is in substantial agreement with its predecessor section as interpreted by the decisions of this court. (*People* v. *Garcia, supra,* 67 Cal.2d 830, 842.) The claim of privilege must thus be examined in the light of these precedents.

We explained at some length in *People* v. *McShann, supra,* 50 Cal.2d 802, and have recently repeated in *People* v.

---

[5]The record reveals that both in the municipal court and in the superior court defendants essentially sought only the disclosure of the identity of the informer because they deemed him to be a material witness on the issue of guilt within the rule of *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33]. The proper method of obtaining such information is by use of a motion for pretrial discovery and not by use of the procedure established by Penal Code section 1538.5. (See *People* v. *Garcia* (1967) 67 Cal.2d 830, 834 [64 Cal.Rptr. 110, 434 P.2d 366].) However, we treat the case as being properly before us based on the denial of the pretrial motion for discovery.

[6]By stipulation the record of the proceedings in the municipal court was made a part of the record in the superior court.

*Garcia, supra,* 67 Cal.2d 830, that when it appears from the evidence that an informer is a material witness on the issue of the defendant's guilt, the informer's identity may be helpful to the defendant and nondisclosure would deprive the latter of a fair trial. Thus, when *"the accused seeks disclosure on cross-examination, the People must either disclose [such informer's] identity or incur a dismissal."* (Original italics.) (*People* v. *Garcia, supra,* 67 Cal.2d 830, 836, quoting from *People* v. *McShann, supra,* 50 Cal.2d 802, 808.)

▮ Defendants need not prove that the informer could give testimony favorable to them in order to compel disclosure of his identity nor need they show that he was a participant in or an eyewitness to the crime. (*People* v. *Garcia, supra,* 67 Cal.2d 830, 837.) Their burden extends only to a showing that "in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial." (*People* v. *Williams* (1958) 51 Cal.2d 355, 359 [333 P.2d 19].) "That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. 'No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. *It is the deprival of the defendants of the opportunity of producing evidence which MIGHT [original emphasis] result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.'* (Italics added.) (*People* v. *Castiel* (1957) 153 Cal. App.2d 653, 659 [315 P.2d 79].)" (Original italics.) (*People* v. *Garcia, supra,* 67 Cal.2d 830, 839-840.)

▮ Defendants assert that they did not bring the marijuana into the apartment but rather that it was brought in by other persons during the time defendant Honore was in custody. For this reason they contend that since the informant was at defendant Honore's apartment earlier in the day he "would be able to say if there were any narcotics, and if so who had the narcotics or whether the narcotics were brought into Petitioner Honore's premises while she was in custody and without her permission or consent." We have concluded that this contention has merit.

Defendant Honore was in custody for 14 hours during which time she had no knowledge of what was occurring at

her apartment. The informant visited the apartment sometime between 3 and 8 p.m. and subsequently told Officer Horton that he had seen four people there. It is possible, as defendants contend, that those persons brought marijuana into the apartment and were there when each of defendants arrived at the apartment. Under these circumstances defendants might not have exercised that degree of dominion and control over the marijuana required to sustain a conviction for possession. (See *People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal. Rptr. 823, 359 P.2d 255].) The identity of persons visiting defendant Honore's apartment and their activities while there are thus highly relevant; since the informant saw at least four persons there his testimony as to their identity and activities *"might* result in [defendants'] exoneration." (*People* v. *Castiel, supra,* 153 Cal.App.2d 653, 659.) He is thus a material witness on the issue of guilt and in order to secure defendants a fair trial, his identity must be disclosed.[7]

Contrary to the Attorney General's contention, in order to compel disclosure of the informant, there is no requirement that the latter must have given the police information about the very crime charged. All that is necessary is that he be a material witness on the issue of *defendants' guilt of the crime charged.* In the instant case, the fact that the informant gave the police information only about methedrine

---

[7]We reject the contention of the Attorney General that defendant Newman should be denied discovery of the identity of the informer because he was allegedly apprehended with marijuana in his possession. The record discloses that, according to the testimony of Sergeant Thompson, after entry was made into the apartment Detective Clements ran to the bathroom where defendant Newman was; that he "restrained" the latter at the toilet; that the witness "saw Detective Clements have a partial cigarette in his hand that was wet"; and that the detective's hand was also wet when he emerged from the bathroom to escort defendant Newman into the living room. The sergeant also testified that he was "not positive" that defendant Newman was the only person in the bathroom at the time the apartment was entered by the police. Subsequently, the witness identified People's exhibit number 11 as a cigarette that was "found back of the toilet on the bathroom floor." While the parties stipulated that if he was present at the hearing, an expert would testify that exhibit 11 contained marijuana, nothing in the record indicates that exhibit 11 was the same cigarette that Detective Clements had in his hand when he emerged from the bathroom with defendant Newman. The evidence does no more than form the basis for the inference that defendant Newman was in possession of a "partial cigarette"; nothing indicates that such cigarette contained marijuana. Thus there appears to be an hiatus in the proof. Nor can we conclude that defendant Newman at any time had dominion and control over exhibit 11 which was found on the bathroom floor since (a) there is no evidence of such actual possession and (b) there is no evidence of constructive possession, Newman having been merely a visitor to the apartment and not in possession of the premises. (See *People* v. *Garcia, supra,* 67 Cal.2d 830.)

and visited defendant Honore's apartment only to discover if she possessed methedrine does not mean that what he saw there is any the less relevant on the marijuana charges. His testimony concerning the apartment is material because of whom and what he saw not because of his reasons for going there. It does not lose its significance because of the absence of methedrine.

Finally, the Attorney General asserts that the privilege of nondisclosure would be devoid of all meaning "[i]f a mere assertion of materiality, in the absence of facts showing materiality, were the only requirement for disclosure . . . ." We need only briefly point out that by the very nature of the problem here confronting defendants it is impossible for them to state *facts* which would show the materiality of the informant's testimony. Since they do not know his identity they cannot possibly state factually what he will say if he is required to testify. All that defendants are required to do is to demonstrate "a reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [their] exoneration." (*People* v. *Garcia, supra,* 67 Cal.2d 830, 840.) Defendants have met this burden and as such are entitled to know the name of the informant.

Let a peremptory writ of mandate issue directing the trial court to order the disclosure of the identity of the confidential informer within a reasonable time to be fixed by the court on penalty of dismissal if this is not done.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

The petition of the real party in interest for a rehearing was denied February 19, 1969.